UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN THE MATTER OF:

SUNTEX MARINA INVESTORS, LLC,
SMI TRS OpCo LLC,
SNOOK BIGHT HOLDINGS, LLC,
ST SNOOK BIGHT LLC,
SNOOK BIGHT SMI OpCo, LLC,
for Exoneration and/or Limitation of Liability
as the owner of the Tritoon Pontoon identified
as Sea Breeze #232, its engine, tackle,
appurtenances, etc.,

CASE NO: 2:19-cv-00080-SPC-MRM

     Petitioners.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioners' Motion for Leave to Amend its [sic] Answers and Affirmative Defenses and Implead Non-Parties (Doc. 73), filed on August 25, 2020.  Notably, Petitioners filed Petitioners' Amended Answers and Affirmative Defenses to Claimant's Rule F(5) Claim (Doc. 71) and the Third-Party Complaint (Doc. 72) without leave of the Court.

In the motion *sub judice*, Suntex Marina Investors, LLC and its wholly owned subsidiaries and related entities seek leave to amend their answers and affirmative defenses and to implead Erica Hahn, Graham Scott, and Gartner, Inc.  (Doc. 73 at 5-6).  Although she did not originally oppose the motion, Claimant Emily Irvine filed her Response in Opposition to Petitioners' (D.E. 73) Motion for Leave to Amend its [sic] Answers and Affirmative Defenses and to Implead Non-Parties (Doc. 76) on

September 3, 2020.  With leave of the Court, Petitioners filed their Reply in Support of Petitioners' Motion for Leave to Amend its [sic] Answers and Affirmative Defenses and to Implead Third Parties (Doc. 90) on September 23, 2020.  This matter is ripe for the Court's review.  For the reasons explained below, the Undersigned recommends that Petitioners' Motion for Leave to Amend its [sic] Answers and Affirmative Defenses and Implead Non-Parties (Doc. 73) be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

Petitioners filed a Verified Complaint for Exoneration from or Limitation of Liability following a boating accident.  Only Claimant Emily Irvine responded, asserting a claim (Doc. 43), and Petitioners filed their Answers and Affirmative Defenses in response.  (Doc. 45).

Claimant alleges that she was injured when she fell off a boat owned by Petitioners but driven by her coworker.  (Doc. 73 at 6-6; Doc. 76 at 4; Doc. 90 at 2).  Petitioners seek to implead Claimant's boss, coworker, and employer, (Doc. 73 at 5), and raise new affirmative defenses based on the alleged contractual relationship between Petitioners and the impleaded third parties, (*see* Doc. 71).  Petitioners argue that the amendments are appropriate because of the contractual relationship between the parties and the negligent acts of Mr. Scott and Ms. Hahn.  (*See* Doc. 73 at 5-6).  Thus, Petitioners argue that impleading the third parties is necessary for the Court to determine what acts of negligence or unseaworthiness caused the accident and whether Petitioners had knowledge or privity of the acts.  (Doc. 90 at 6-7).  Claimant

objects, essentially arguing any joint and several liability of the proposed third parties exceeds the limited scope of the limitation of liability action. (Doc. 76 at 2).

The Undersigned addresses both requests below, beginning with Petitioners' request for leave to implead third parties and then turning to Petitioners' request for leave to amend their Answer and Affirmative Defenses.

## DISCUSSION

### I. Leave to Implead Third Parties

Petitioners contend that the acts of the third parties ultimately caused the accident, (*see* Doc. 73 at 6-8), and that impleading the third parties will "allow[] the Court to hear all facts as alleged by both parties that specifically relate to acts of negligence and/or unseaworthiness, and to determine if Petitioners had privity and knowledge of them," (Doc. 90 at 7). Additionally, Petitioners maintain that such impleader is proper in the context of a limitation of liability action. (*See* Doc. 73 at 3-4; Doc. 90 at 5-7).

Claimant opposes the relief sought, arguing, in essence, that impleading third parties in a limitation of liability action is inappropriate and the new affirmative defenses will exceed the scope of the action. (*See* Doc. 76 at 2). In support, Claimant contends that the Eleventh Circuit has narrowed the issues properly before the Court in this type of action. (Doc. 76 at 1-2 (citing *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1230 (11th Cir. 1990))). Moreover, Claimant contends that binding precedent in this Circuit prohibits Petitioners from impleading third parties in limitation of liability

3

actions. (Doc. 76 at 2-3 (citing *Louisiana Dep't of Highways v. Jahncke Serv.*, 174 F.2d 894 (5th Cir. 1949))).

In response, Petitioners contend that the former Fifth Circuit's decision in *Jahncke* is inapposite and that, following the United States Supreme Court's decision in *British Transport Commission v. United States*, 354 U.S. 129, 142 (1957), courts routinely permit the use of Rule 14(c) in these actions. (*See* Doc. 90 at 3-4; 6-8 (citations omitted)).

Federal Rule of Civil Procedure 14(c)(1) governs the scope of impleader in admiralty cases. The Rule states:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable – either to the plaintiff or to the third-party plaintiff – for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.

Fed. R. Civ. P. 14(c)(1).

Generally, the objective of Rule 14 "is to make for the more efficient administration of justice"—that is "to reduce the litigation by having one lawsuit do the work of two." *Cincinnati Specialty Underwriters Ins. Co. v. Code 3 Sec. & Prot. Servs., Inc.*, No. 8:16-CV-127-T-30TBM, 2016 WL 2759152, at *2 (M.D. Fla. May 12, 2016) (quoting *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967)); *see also Herrera v. 7R Charter Ltd.*, No. 16-CV-24031, 2018 WL 7825023, at *1 (S.D. Fla. Apr. 30, 2018) (applying the general propositions of Rule 14(a) to a motion made

4

under Rule 14(c)).  Ultimately, the decision to permit a third-party action under Rule 14 is within the Court's discretion.  *Cincinnati Specialty Underwriters Ins. Co*, 2016 WL 2759152, at *5.  When the Court evaluates whether to exercise its discretion under Rule 14, the following factors should be considered:  "(1) the merits of the underlying action; (2) the merits of the third-party complaint; (3) the potential of impleader to complicate or delay the action; and (4) the prejudice to the impleaded party."  *Id.*

As to limitation of liability actions, the Eleventh Circuit has held that the determination of whether the owner of a vessel is entitled to limitation of liability requires a two-step analysis.  *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1230 (11th Cir. 1990) (citing *Farrell Lines, Inc. v. Jones,* 530 F.2d 7, 10 (5th Cir. 1976)).  "First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident.  Second, the court must determine whether the ship owner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness."  *Id.*

As a threshold consideration, therefore, the Court must determine whether the limited scope of a limitation of liability action permits parties to use Rule 14.  The Undersigned finds that the limited decisions by or within the Eleventh Circuit on the issue necessitates a historical review of decisions addressing the issue.

In 1949, the former United States Court of Appeals for the Fifth Circuit[1] held that the petitioner in a limitation of liability action could not implead a non-party but provided no factual background or analysis to support its conclusion. *See Jahncke Serv.*, 174 F.2d at 895.

Eight years later, the United States Supreme Court permitted the claimant in a limitation of liability action to implead a party. *British Transp. Comm'n*, 354 U.S. at 142. In *British Transportation Commission*, the United States filed a limitation of liability action following a boating accident involving its boat U.S.N.S. Haiti Victory ("Haiti") and the Duke of York, owned by the British Transport Commission. *Id.* at 130-31. In addition to the passengers aboard the vessel, the British Transport Commission filed a claim. *Id*. The United States answered and alleged that the Duke of York was the sole cause or joint cause of the accident and sought a set-off for the damages of the remaining claimants. *Id.* at 131-32. Many claimants then filed impleading petitions against the Duke of York, contending that it was responsible, in whole or in part, for their injuries. *Id.* at 132. The Fourth Circuit Court of Appeals reversed the district court's dismissal of the claims, concluding that "all rights, if this can fairly be done, should be decided in a single legal proceeding" and that "parties who submit themselves to the jurisdiction of a court in a legal proceeding should be bound by that court's decision on all questions" appropriately

---

[1] The Eleventh Circuit adopted Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, as binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

6

raised therein. *Id.* 132-33. The United States Supreme Court affirmed the appellate court's decision, concluding that the court's reasoning "can reasonably be deduced from the spirit, if not the letter, of the 56th Admiralty Rule."[2] *Id.* In reaching this conclusion, the Supreme Court noted that "[l]ogic and efficient judicial administration require that recovery against all parties at fault is as necessary to the claimants as is the fund which limited the liability of the initial petitioner. Otherwise this proceeding is but a 'water haul' for the claimants, a result completely out of character in admiralty practice." *Id*. at 138. Moreover, the Supreme Court specifically distinguished the case from the Fifth Circuit's decision in *Jahncke*, noting:

> [w]e believe [*Jahncke*] inapposite also. There Jahncke's barges tore loose in a windstorm and damaged the Department of Highways' bridge. Jahncke petitioned for limitation and the Department, after filing its claim and answer, then attempted to implead the Town of Madisonville, the owner of some other barges, which also had struck the bridge. Obviously there was no connection, other than the same wind and water, between Madisonville's barges which were independently moored and Jahncke's. Madisonville had filed no claim in Jahncke's limitation proceeding, the damages arising from a distinctly separate incident.

*Id.* at 141.

Since *British Transport Commission*, however, only one case in the Middle District of Florida has specifically addressed this issue. *See Marmac, LLC v. Reed*, 232

---

[2] Rule 14 was modeled after Admiralty Rule 56 and retained, for the purposes of admiralty law, the former practice under Admiralty Rule 56. *See* Fed. R. Civ. P. 14 advisory committee notes (1966).

7

F.R.D. 409, 412 (M.D. Fla. 2005). In *Marmac*, United States District Judge Gregory Presnell cited *British Transport Commission* for the proposition that "[c]learly impleader under Rule 14(c) is appropriate in a limitation proceeding." *Id*. (collecting cases). Judge Presnell ultimately found, however, that the action was not governed by maritime law and did not discuss the issue further. *Id.* at 413-14.

Nevertheless, it appears that the former Fifth Circuit also permitted impleader by Petitioner in limitation of liability actions following *British Transport Commission*. *See, e.g.*, *Empire Seafoods, Inc. v. Anderson*, 398 F.2d 204, 208 (5th Cir. 1968) (noting that the petitioner had impleaded a third party who was liable to it); *Guillot v. Cenac Towing Co.*, 366 F.2d 898, 910 (5th Cir. 1966) (citing *British Transport Comm.*, 354 U.S. at 129 and noting that petitioner had impleaded third parties under Admiralty Rule 56 seeking indemnification or contribution). To the extent that the claimants in the above cited cases sought to litigate the action fully in federal court—therefore, distinguishing them from the instant action—the Undersigned notes that courts outside the former Fifth Circuit permitted impleader in limitation of liability actions in the years following the Supreme Court's decision. *See, e.g.*, *Petition of Klarman*, 270 F. Supp. 1001, 1002 (D. Conn. 1967) (collecting cases); *Petition of Sandra & Dennis Fishing Corp.*, 227 F. Supp. 620, 622 (D. Mass. 1964).

For example, as the District of Connecticut noted shortly after *British Transport Commission*:

> Fed. R. Civ. P. 14(c) as created by amendment in 1966 with
> the intention of retaining, in any case which is a counterpart

8

> to a suit in admiralty, the former admiralty practice under Admiralty Rule 56 of permitting impleader not only of a person liable to a defending party, but also of one who might be primarily and directly liable to the party in the position of a plaintiff.

*Id.* (citing Fed. R. Civ. P. 14 advisory committee notes (1966)). Relying on the relationship between Admiralty Rule 56 and Fed. R. Civ. P. 14(c), the Court in *Klarman* found that the Supreme Court rejected the interpretation that limitation of liability actions were "such a uniquely narrow and passively defensive proceeding that allowance of impleader by a petitioner [should be] denied" and, thus, prevented "the mere labeling of an action as a limitation proceeding" to bar the ordinary use of the admiralty rules of procedure. *Id.* at 1002-03. Accordingly, the *Klarman* Court determined that courts had properly allowed "parties to a limitation proceeding to avail themselves of the normal third-party practice." *Id.* at 1003 (*citing In the Matter of the Petition of Alva Steamship Co.*, Civil No. 66 Ad. 622, S.D.N.Y., April 21, 1967; *Petition of Sandra & Dennis Fishing Corp.*, 227 F. Supp. 620, 621-22 (D. Mass. 1964); *Val Marine Corp v. Costas*, 256 F.2d 911, 915 (2d Cir. 1958); *Guillot v. Cenac Towing Co.*, 366 F.2d 898, 904 (5th Cir. 1966); 3 Moore's Federal Practice P14.20 (2d ed. 1966)).

More recently, courts outside this district have continued to allow this type of impleader. *See, e.g.*, *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 859 F. Supp. 669, 672 (S.D.N.Y. 1994), *on reconsideration* (Aug. 24, 1994); *Williamson Towing Co. v. State of Ill.*, 396 F. Supp. 431, 433 (E.D. Ill.

1975), *aff'd,* 534 F.2d 758 (7th Cir. 1976); *In re McAninch*, 392 F. Supp. 96, 97 (S.D. Tex. 1975). In *In re McAninch*, for example, the Southern District of Texas permitted a petitioner to implead a non-party who could be liable to the petitioner for the claims asserted against it, namely the company that manufactured the refrigerator that caused death by asphyxiation to those aboard. *Id*. In so permitting, the Court noted that:

> [t]he spirit of judicial economy was the basis of *British Transport Comm. v. United States*, . . . , and a moving force behind the 1966 unification of the Admiralty Rules and the Federal Rules of Civil Procedure. To utilize Rule 14(c) in the limitation proceedings following a maritime disaster will certainly expedite matters by getting all the parties concerned involved in a single proceeding. This application of Rule 14 in the context of a limitation proceeding is, in the opinion of this Court, a very common-sense approach.

*Id.*

Having thoroughly reviewed the historical backdrop of the issue, as well as the parties' arguments, the Undersigned is persuaded that Fed. R. Civ. P. 14(c) permits the use of impleader by the petitioner in a limitation of liability action. Thus, the Undersigned turns to the issue of whether impleading the third parties is appropriate in the instant action.

As an initial matter, assuming *arguendo* that the Supreme Court's decision in *British Transport Commission* did not overrule *Jahnke*, the Undersigned finds *Jahnke*, nonetheless, distinguishable. Unlike, the claimant in *Jahnke* who sought to implead parties with no connection to the petitioner's claim, *see British Transp. Comm'n*, 354 U.S. at 141, Petitioners here seek to implead third parties with a very clear

10

connection Claimant's injuries and the proposed third parties. Specifically, in the instant case the proposed third parties signed the rental contract and operated the vessel. (*See* Doc. 73 at 6-6; Doc. 76 at 4; Doc. 90 at 2). As a result, Petitioners allege that the third parties may be liable in part or in full for the accident. (*Id.* (citing Docs. 90-1; 90-2)). Moreover, Petitioners specifically contend that impleading the third parties will "allow[] the Court to hear all facts as alleged by both parties that specifically relate to acts of negligence and/or unseaworthiness, and to determine if Petitioners had privity and knowledge of them." (Doc. 90 at 7).

Given Petitioners' assertions, the Undersigned finds that this case mirrors *In re McAninch*. *See In re McAninch*, 392 F. Supp. at 97. Specifically, like the petitioners in *In re McAninch*, Petitioners in the instant action seek to implead third parties that they allege are the actual and proximate cause of Claimant's injuries. (Doc. 73 at 5-6). Thus, as the Court in *In re McAninch* concluded, "utilize[ing] Rule 14(c) in the limitation proceedings following a maritime disaster will certainly expedite matters by getting all the parties concerned involved in a single proceeding" and is, therefore, "a very common-sense approach." *See In re McAninch*, 392 F. Supp. at 97; *see also Matter of Delta Towing, LLC*, No. CV 15-00128-KD-M, 2016 WL 5923426, at *3 (S.D. Ala. Oct. 11, 2016) (quoting *Texaco Exploration & Prod. Co. v. AmClyde Engineered Products Co.*, 243 F.3d 906, 910 (5th Cir. 2001)) (stating the "unique liberal joinder policy [of Rule 14(c)] served to reduce the possibility of inconsistent results in separate actions, eliminate redundant litigation, and prevent a third party's

11

disappearing if jurisdiction and control over the party and his assets were not immediately established").

Finally, to the extent that Claimant argues that allowing the parties to litigate indemnification or contribution will prevent her from litigating her damages in a jury trial, (*see* Doc. 76 at 13), the Undersigned is unpersuaded.  Rather, Petitioners may argue indemnification in the abstract without discussing the specific amounts of damages, which is not properly before this Court.  *See* Part II *infra* at pp. 14-15.  Thus, Claimant will be able to litigate her case in state court despite the indemnification issue or contribution having already been determined.

For the reasons above, and because Claimant has otherwise not argued that impleading the third parties would delay the action or prejudice the impleaded parties, the Undersigned finds that impleader is proper in this case.  *See Cincinnati Specialty*, 2016 WL 2759152, at *2.  Accordingly, the Undersigned recommends that the motion be granted to the extent that Petitioners seek leave to file a Third-Party Complaint against Erica Hahn, Graham Scott, and Gartner Inc.

Notwithstanding this recommendation, the Undersigned notes that Petitioners have already filed the Third-Party Complaint without obtaining leave of Court to do so.  (*See* Doc. 72).  Thus, the Undersigned also recommends that if the presiding United States District Judge accepts and adopts the Undersigned's recommendation as to impleader, then the Court should accept the Third-Party Complaint as filed and instruct the Clerk of Court to issue the related summonses (*see* Docs. 99, 100, 101).  If the presiding United States District Judge rejects the Undersigned's recommendation

as to impleader, then the Court should strike the Third-Party Complaint as improperly filed.

## II.     Leave to Amend Answer and Affirmative Defenses

Federal Rule of Civil Procedure 15(a)(2) provides that after a responsive pleading is served, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  The decision whether to permit an amendment is within the sound discretion of the court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Court must find a justifiable reason to deny a request for leave to amend.  *Id*.  "[T]he Supreme Court indicated that a court should deny leave to amend a pleading only when:  (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile."  *Taylor v. Florida State Fair Auth.*, 875 F. Supp. 812, 815 (M.D. Fla. 1995) (citing *Foman*, 371 U.S. at 182); *see also Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1217 (11th Cir. 2004).

Although only briefly discussed by Claimant, it appears that she argues that rather than add affirmative defenses, Petitioners should be required to omit affirmative defenses that are not properly before the Court.  (*See* Doc. 76 at 13-14). In their reply, Petitioners do not specifically address whether their affirmative defenses are appropriate, relying instead on the discussion of whether impleader is proper.  (*See generally* Doc. 90).

The Undersigned finds Claimant's argument persuasive in part. The Eleventh Circuit has held that assumption of the risk and contributory negligence are not defenses to a claim of unseaworthiness. *See Villers Seafood Co. v. Vest*, 813 F.2d 339, 342 (11th Cir. 1987). In *Villers Seafood Company*, the Eleventh Circuit reversed the district court's decision exonerating the vessel owner of all liability. *Id.* at 340. Specifically, the Eleventh Circuit held that the district court erroneously relied on the claimant's own negligence and concluded that even if the court found that the claimant were negligent, "it would not bar recovery in this action." *Id*. at 342.

Thus, the Undersigned finds that although Petitioners may implead the third parties, they may not include affirmative defenses that attempt to limit Claimant's damages because this issue is not properly before this Court. *See id.* As noted above, the Undersigned finds that the issue of indemnification and contribution may be addressed, but unless and until Claimant puts the issue of damages before the Court, affirmative defenses relating to the issue are inappropriate. *See Villers Seafood Co.*, 813 F.2d at 340.

To the extent Petitioners attempt to argue that Claimant has put the issue of damages before the Court, the Undersigned disagrees. In filing a limitation of liability action under 46 U.S.C. §30501 *et seq.*, Petitioners enjoined any claimant from bringing his or her claim before another court of competent jurisdiction until the issue of the limitation or exoneration of their liability was determined. (*See* Doc. 11 at 4 (staying and restraining any action against Petitioners with respect to any claim subject to this action)). Nevertheless, where only one claimant has asserted a

14

claim, the claimant may choose to have the issue of damages decided in state court or by federal court sitting in law rather than admiralty. *Complaint of Adventurent, Inc.*, 772 F. Supp. 1250, 1253 (M.D. Fla. 1991) (citing *Langnes v. Green*, 282 U.S. 531(1931)). Specifically, when there is only one claimant and the claimant seeks an award in excess of the limitation fund, the claimant may seek to have her case heard by a court of competent jurisdiction so long as the claimant concedes that the question of limitation should be heard by the federal court without a jury. *Id.*

Thus, although Claimant here asserted a claim against Petitioners, (*see* Doc. 42), she did so to protect the claim from default pursuant to the Court's Order dated March 8, 2019, (*see* Doc. 11 at 3). Nevertheless, Claimant has continually represented that her desired forum is state court, (*see, e.g.*, Doc. 42 at 3; Doc. 75 at 3; Doc. 76 at 4 n.3), and doing so is permitted by law, *see Complaint of Adventurent, Inc.*, 772 F. Supp. at 1253. Importantly, even the claim itself reserved Claimant's "right to present her claim for damages in the forum of her choice upon the Court denying the Petitioners' Complaint for Exoneration and/or Limitation." (*see* Doc. 42 at 3). Accordingly, the Undersigned finds that in bringing her claim to protect it from default, Claimant has not put the amount of damages at issue before this Court.

Notwithstanding this finding, as the Claimant alludes, several affirmative defenses in the original answer relate directly to the issue of contributory negligence and mitigation of damages. (*See, e.g.*, Doc. 45 at 3-6, ¶¶ 6, 7, 10, 13, 21).

Thus, to the extent that Petitioners seek to amend their affirmative defenses to add defenses relating to the third parties' actions affecting the "acts of negligence

15

and/or unseaworthiness, and to determine if Petitioners had privity and knowledge of them," the Undersigned recommends that Petitioners' request be granted but that Petitioners be required to remove any affirmative defenses relating to Claimant's damages. (Doc. 90 at 7). Such a result does not prejudice, but in fact benefits, Claimant because if the impermissible defenses are carried forward in the amended answer, Claimant will have an opportunity to move to strike the defenses. *See* Fed. R. Civ. P. 12(f). In contrast, the time has passed for Claimant to move to strike the affirmative defenses in the original complaint that are beyond the scope of these limited proceedings. *See id.* Accordingly, allowing Petitioners to amend their affirmative defenses permits Petitioners to assert appropriate affirmative defenses in light of the third-party claims and to remove in improper affirmative defenses, all while allowing Claimant to strike any affirmative defenses impermissibly carried forward.

As a result, the Undersigned recommends that the motion be granted to the extent it seeks leave to amend the Answers and Affirmative Defenses, but that Petitioners be warned that the amended affirmative defenses must relate to the narrow issues properly before this Court.

Notwithstanding this recommendation, the Undersigned notes that Petitioners filed the Amended Answers and Affirmative Defenses without leave of the Court. (*See* Doc. 71). Thus, the Undersigned also recommends that the presiding United States District Judge strike the impermissibly filed Amended Answers and

16

Affirmative Defenses and require Petitioners to refile the pleading without the improper affirmative defenses.

## CONCLUSION

Based upon the foregoing, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. Petitioners' Motion for Leave to Amend its [sic] Answers and Affirmative Defenses and Implead Non-Parties (Doc. 73) be **GRANTED IN PART and DENIED IN PART** as follows:

    a. The motion be granted to the extent that Petitioners seek leave to file a Third-Party Complaint against Erica Han, Graham Scott, and Gartner Inc.;

    b. The motion be granted to the extent it seeks leave to amend the Answers and Affirmative Defenses, but that Petitioners be warned that the amended affirmative defenses must relate to the narrow issues properly before this Court; and

    c. The motion be denied to the extent it seeks any other relief.

2. If the presiding United States District Judge accepts and adopts the Undersigned's recommendation as to impleader, then the Court should accept the Third-Party Complaint (Doc. 72) as filed and instruct the Clerk of Court to issue the related summonses (*see* Docs. 99, 100, 101). If the presiding United States District Judge rejects the Undersigned's

recommendation as to impleader, then the Court should strike the Third-Party Complaint (Doc. 72) as improperly filed.

3. If the presiding United States District Judge accepts and adopts the Undersigned's recommendation as to amending the Answers and Affirmative Defenses, then the Court should strike the impermissibly filed Amended Answer and Affirmative Defenses (Doc. 71).

**RESPECTFULLY RECOMMENDED** in Chambers in Fort Myers, Florida on January 19, 2021.

Mac R. McCoy
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record

18

Unrepresented Parties

19